IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARY NEMCHOCK,                          )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )        Case No. 03-4175-KGS
                                        )
A. ZAHNER COMPANY,                      )
                                        )
                    Defendant.          )

## MEMORANDUM AND ORDER

Plaintiff, a resident of Kansas, brings suit against a Missouri corporation alleging breach of plaintiff's written employment contract with defendant. The parties agree that the substantive issues in this diversity action are governed by Kansas law. This matter comes before the court upon defendant's motion for summary judgment (Doc. 29). Plaintiff filed a response in opposition to defendant's motion (Doc. 36), to which defendant timely replied (Doc. 37). The matter is therefore fully-submitted and ripe for decision.

**I.      Summary Judgment Standard.**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[1]  For purposes of reviewing a summary judgment motion, a factual dispute is "material" only if it "might affect the outcome of the suit

---

[1] Fed. R. Civ. P. 56(c).

under the governing law."[2]  A "genuine" issue of fact exists where "there is sufficient evidence on each side

so that a rational trier of fact could resolve the issue either way."[3]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of

material fact.[4]  To meet this standard, the moving party may simply point out the absence of evidence

supporting an essential element of the non-moving party's claim.[5]  Once the moving party accomplishes this

task, the burden shifts to the non-moving party to show that genuine issues remain for trial "as to those

dispositive matters for which it carries the burden of proof."[6]  The non-moving party may not rest on mere

allegations or denials in its pleading in opposition to summary judgment, but "must set forth specific facts

showing that there is a genuine issue for trial."[7]  While the court must consider the record in the light most

---

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson,* 477 U.S. at 248).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  *See also Doebele v. Sprint Corp.*, 157 F.Supp.2d 1191, 1195 (D. Kan. 2001), *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991).

[5] *Adams v. Am. Guarantee & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000).

[6] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

[7] *Anderson*, 477 U.S. at 256.

favorable to the non-moving party,[8] the mere existence of some alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment.[9]

On a motion for summary judgment, the "judge's function is not. . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[10] The standard for summary judgment mirrors the standard for directed verdict. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[11] "If the [c]ourt concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment."[12]

II.     Facts

The following facts are either uncontroverted or, if controverted, construed in the light most favorable to plaintiff as the non-moving party. Immaterial facts and factual averments not properly supported by the record are omitted.

---

[8]  *See Doebele*, 157 F. Supp.2d at 1195.  *See also Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991).

[9]  *Id.*

[10]  *Anderson,* 477 U.S. at 249.

[11]  *Id.* at 251-52.

[12]  *Anderson v. City of Cleveland*, 90 F. Supp. 2d 906, 907-08 (E.D. Tenn. 2000) (citing *Anderson v. Liberty Lobby*, 477 U.S. at 251-52.)

Plaintiff commenced this action by filing a petition in the District Court of Douglas County, Kansas on or about June 4, 2003. Plaintiff has alleged a single cause of action for breach of a written contract by defendant.   It is alleged that plaintiff was entitled to compensation from defendant for his services in assisting defendant to obtain and complete a contract to perform work on the Oakley Technical Center construction project (hereinafter "Oakley Project").  It is further alleged that this compensation was to be between seven and ten percent of defendant's revenues from the Oakley Project.

On or about April 29, 1996, defendant sent to plaintiff via facsimile transmission a proposed employment agreement concerning services that, either had been provided, or were to be provided by plaintiff with regard to the Oakley Project.[13]  This proposed employment agreement  did not provide for signatures and was never signed by either plaintiff or any representative of defendant.  The words "call to discuss" appeared at the end of the proposed employment agreement.   The proposed employment agreement did not contain any provision setting forth a specific time for payment.

Plaintiff's compensation was not expressed in terms of any percentage of defendant's expected Oakley Project revenues in the proposed employment agreement; however, the agreement did detail revenue amounts budgeted for various stages of the project, and list fees on behalf of plaintiff broken down by comparable project stages. Specifically, the proposed employment agreement listed fees for plaintiff for "engineering" of $9,200.00, for "fabrication" of $107,000.00, and for "installation" of $30,000.00.

---

[13] *See Proposed Employment Agreement*, attached as Exhibit 1 to *Zahner Affidavit*, which is attached as Exhibit B to *Defendant's Motion for Summary Judgment With Supporting Memorandum* (Doc. 29).

Plaintiff's responsibilities on behalf of defendant with regard to the Oakley Project were to obtain for defendant a contract to act as a subcontractor to the project's general contractor, Snyder Langston. Plaintiff's activities on behalf of defendant with regard to obtaining the Oakley Technical Center Contract (hereinafter "Oakley Contract") were largely complete with the signing of a preconstruction contract between Snyder Langston and defendant on or after July 31, 1996, because the preconstruction contract, if satisfactorily fulfilled, was structured to rollover into a final contract, making the job "Zahner's to lose."[14] The preconstruction contract between defendant and Snyder Langston, when completed, did rollover into a final contract.

The Oakley Contract between defendant and Snyder Langston was a "cost plus" contract that required defendant to submit all of its costs for payment, as they were incurred, on subcontractor's progress payment request forms provided by the general contractor. Defendant's last subcontractor's progress payment request form submitted to the general contractor under the Oakley Contract was dated February 25, 1998. Defendant deposited payment for this last request into its account on March 18, 1998. The services provided by defendant to Snyder Langston under the Oakley Contract were completed no later than April 20, 1998, when defendant completed its job closeout form and transferred the Oakley Project file to its records inventory.

---

[14] *Plaintiff's Response to Defendant's Motion for Summary Judgment and Supporting Memorandum* (Doc. 36) at ¶ 15.

On or about August 15, 1998, defendant made an offer of settlement to plaintiff that addressed outstanding financial matters between plaintiff and defendant, including, but not limited to, compensation sought by plaintiff for his activities on behalf of defendant related to the Oakley Project.

### III.    Analysis

Defendant moves for summary judgment on the bases that there are no genuine issues of material fact with regard to: (1) plaintiff 's failure to bring this action within the three-year statute of limitations applicable to oral contracts; (2) plaintiff's failure to bring this action within the five-year statute of limitations applicable to written contracts; and (3) plaintiff's inability to produce any evidence to support the elements of his claim that under the written contract he was entitled to a commission of between seven and ten percent of defendant's revenues from the Oakley Project to be paid at the end of the project.

The parties agree that an action founded upon a written contract is governed by the five-year statute of limitations established by K.S.A. § 60-511, which provides in relevant part, "The following actions shall be brought within five (5) years:  (1) An action upon any agreement, contract or promise in writing."[15] Defendant contends that, in the event plaintiff attempts to supplement the written contract between the parties with additional oral terms related to the payment of a commission, the combined written and oral agreement is subject to the three-year statute of limitations established by K.S.A. § 60-512.  That Kansas statute provides in relevant part, "The following actions shall be brought within three (3) years: (1) All

---

[15] K.S.A. § 60-511 (1994).

actions upon contracts, obligations or liabilities expressed or implied but not in writing."[16]  Plaintiff concedes

that, in the event this action is determined to fall within the three-year statute of limitations pursuant to

K.S.A. § 60-512(1), it was not filed within the time period allowed by the statute.[17]  Therefore, with

respect to statutes of limitations, the issues to be resolved are whether this action is subject to a three or

five-year statute and, if this action is found to be subject to the five-year statute of limitations, whether it

was filed within the time allowed by the statute.

### A.  Applicability of the Three-Year Statute of Limitations

With respect to the issue of whether the three or five-year statute of limitations should apply to this

action, Kansas law is well-settled that in order for the five-year statute to apply the written agreement must

be complete with regard to all material terms.

> The general rule is that a written agreement, contract or promise in writing which falls within
> the five-year statute of limitations, K.S.A. § 60-511(1), must contain all its material terms
> in writing.  A contract which is partly in writing and partly oral is in legal effect an oral
> contract so far as the statute of limitations may be concerned.  The writing necessary to
> have the additional protection of the five-year statute must be full and complete in itself so
> as not to require proof of extrinsic facts to establish all essential contractual terms.[18]

"The writing need not, however, be signed by all parties, and where a writing containing all the essential

terms of a contract is executed by the party to be charged[,] and the contract is accepted and acted on by

---

[16] K.S.A. § 60-512 (1994).

[17] *Plaintiff's Response to Defendant's Motion for Summary Judgment and Supporting Memorandum* (Doc. 36) at "Arguments and Authorities," ¶ A.

[18] *Chilson v. Capital Bank of Miami, Florida*, 237 Kan. 442, 446, 701 P.2d 903, 907 (1985) (citing *Fey v. Loose-Wiles Biscuit Co.,* 147 Kan. 31, 75 P.2d 810 (1938)).

the other party[,] the contract is one in writing for purposes of determining which statute of limitations applies."[19]

In this instance, plaintiff brought this action as one to enforce a written contract.  Both parties acknowledge that the contract is founded in whole, or in part, upon the written proposed employment agreement that was sent from defendant to plaintiff by facsimile on or about April 29, 1996.  Defendant contends that, because of plaintiff's continued reference to an entitlement of compensation at a rate of seven and ten percent of the Oakley Project revenues that is not expressly  stated in the contract, plaintiff must intend to support this alleged contract term through the use of some additional parol evidence beyond the written agreement.  The court does not find this assumption necessarily to be true.

Plaintiff appears to derive his alleged seven to ten percent rate of compensation by extrapolating: from the figures listed in the proposed employment agreement; the relationship these figures bear to phases of the project; the relationship that the figures for plaintiff's fees bear to the project budget; and the language written into the agreement, between the listing of the project budget and the listing plaintiff's fees, which states "G.N. This allows for the following fees on your behalf adjust the price accordingly."[20]  Plaintiff apparently analyzes the relationship of all the numbers to one another, *as they are written in the agreement*, and then reads the "adjust the price accordingly" language to mean that his fees would increase

_____

[19] *Id.* (citing *Miller v. William A. Smith Constructing Co.*, 226 Kan. 172, 174, 603 P.2d 602 (1939); *see also Fey v. Loose-Wiles Biscuit Co.*, 147 Kan. 31, 75 P.2d 810 (1938).

[20] *See Proposed Employment Agreement*, attached as Exhibit 1 to *Zahner Affidavit*, which is attached as Exhibit B to *Defendant's Motion for Summary Judgment With Supporting Memorandum* (Doc. 29).

to maintain their same percentage relationship to the project budget as the project budget increased.  The court makes no finding as to whether this interpretation of the terms of the written agreement is reasonable because this reflects an issue more properly reserved for a trier of fact.[21]  However, because it appears that plaintiff bases his claim for the seven to ten percent compensation on an interpretation of the terms of the written contract and makes no reference to any extrinsic evidence, his maintenance of this aspect of his claim does not necessitate the application of the three-year statute to this action.  The court therefore concludes that the five-year statute of limitations pursuant to K.S.A. § 60-511(1) properly applies in this case.

**B.     Timeliness Under the Five-Year Statute of Limitations**

The court will now examine whether the instant case was timely brought within the period of the five-year statute.  "Under Kansas law, the statute of limitations for breach of contract begins to run when [a defendant] allegedly breach[es] the contract."[22]  "A cause of action for breach of contract accrues when a contract is breached by the failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes."[23]  "A cause of action accrues when the right to institute and

---

[21] *See Hays v. Underwood*, 196 Kan. 265, 267, 411 P.2d 717, 720-21 (1966).

[22] *Oakview Treatment Centers of Kansas, Inc. v. Garrett*, 53 F. Supp. 2d 1196, 1202 (D. Kan. 1999) (citing *Voth v. Chrysler Motor Corp.*, 218 Kan. 644, 651, 545 P.2d 371 (1976); *Wolf v. Brungardt*, 215 Kan. 272, 279, 524 P.2d 726 (1974)).

[23] *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 174 F. Supp. 2d 1199, 1202-03 (D. Kan. 2001) (citing *Pizel v. Zuspann*, 247 Kan. 54, 795 P.2d 42, 54 (1990)).

9

maintain a suit arises, or when there is a demand capable of present enforcement."[24]  "There must be a right, a duty, and a default."[25]

Taken in the light most favorable to plaintiff, the court assumes for purposes of this discussion that the writing exchanged by the parties constitutes a valid written contract.  Under these circumstances, there is no issue with regard to their being a right on the part of plaintiff to be compensated for his activities and a duty on the part of defendant to provide compensation.  However, because the agreement is silent as to when plaintiff is to receive payment, there is an issue with regard to when the final element, that of default, arises.

"Kansas law holds that when a contract does not provide a time for performance or the occurrence of a necessary event, a reasonable time is implied."[26]  "What is a reasonable time is usually a question of fact to be determined by the jury."[27]  "However, if there is no dispute as to the facts. . . , the issue of what is reasonable becomes a question of law."[28]

------

[24] *Oakview Treatment Centers of Kansas , Inc.*, 53 F. Supp. 2d at 1202 (citing *Holder v. Kansas Steel Built, Inc.*, 224 Kan. 406, 410, 582 P.2d 244, 248 (1978)).

[25] *Id.* (citing *Edward Kraemer & Sons, Inc. v. City of Overland Park*, 19 Kan. App. 2d 1087, 1091, 880 P.2d. 789, 793 (1994)).

[26] *Oakview Treatment Centers of Kansas , Inc.*, 53 F. Supp. 2d at 1204 (citing *Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, 749, 822 P.2d 64, 67 (1991)).

[27] *Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, 751, 822 P.2d 64, 67 (1991) (citing *Rymph v. Derby Oil Co.*, 211 Kan. 414, 418, 507 P.2d 308, 312 (1973); *Marsh v. Brown-Crummer Inv. Co.*, 138 Kan. 123, 130, 23 P.2d 465, 468 (1933)).

[28] *Id.* at 751, 822 P.2d at 67-68; *see also Marsh*, 138 Kan. at 130, 23 P.2d at 468.

Defendant addresses the time of payment issue obliquely by emphasizing that no written provision in the alleged contract required plaintiff to wait until completion of the Oakley Contract before receiving payment for his services provided and costs incurred on behalf of defendant.[29]

Plaintiff also fails to address the issue directly in his response.  However, he acknowledges that his right to receive payment arose upon defendant's completion of the Oakley Project when he states that he "was not notified that the project was over and the time for him to be paid had arrived,"[30] and that, "[a]lthough no written provision exists under the written agreement between the parties setting forth a specific time for payment, *it is clear that if payments have not been made by the end of the [Oakley] Contract, (common sense dictates) at that time payment would be due.*"[31]

Plaintiff contends he first received notice that defendant did not intend to pay him the compensation owed under the contract when he received the offer of settlement from defendant on August 15, 1998.[32] As noted above, under Kansas law, "[a] cause of action for breach of contract accrues when a contract is breached by the failure to do the thing agreed to, irrespective of any knowledge on the part of the

---

[29] *Defendant's Motion for Summary Judgment With Supporting Memorandum* (Doc. 29) at ¶ 14.

[30] *Plaintiff's Response to Defendant's Motion for Summary Judgment and Supporting Memorandum* (Doc. 36) at ¶ 6.

[31] *Plaintiff's Response to Defendant's Motion for Summary Judgment and Supporting Memorandum* (Doc. 36) at ¶ 14 (emphasis added).

[32] *See Plaintiff's Response to Defendant's Motion for Summary Judgment and Supporting Memorandum* (Doc. 36) at ¶ 5.

plaintiff."[33]   Therefore, whether plaintiff knew defendant intended to breach the parties' contract at the conclusion of the Oakley Contract is immaterial to whether his cause of action accrued at that time for purposes of the limitation period beginning to run.

There appears to be no disagreement as to the fact that plaintiff's right to receive payment under the employment contract had at least arisen by the time of defendant's completion of the Oakley Contract. It is uncontroverted that defendant submitted its last subcontractor's progress payment request to the general contractor on February 25, 1998,[34] deposited the final payment from the general contractor for that request in its account on March 18, 1998,[35] and completed its job closeout form and transferred the project file to its records inventory on April 20, 1998.[36]   The completion of the closeout form indicates defendant was finalizing the administrative details related to the Oakley Project.  The proposed employment agreement required plaintiff to provide "assistance in getting [the Oakley] job, assistance in setting up the finishing process, [and] assistance in owner/arch[itect]/g[eneral] c[ontractor] relationship through duration

---

[33] *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42, 54 (1990) (citing *Price v. Holmes*, 198 Kan. 100, 106, 422 P.2d 976, 981 (1967)).

[34] *Defendant's Motion for Summary Judgment With Supporting Memorandum* (Doc. 29) at ¶ 5; *Plaintiff's Response to Defendant's Motion for Summary Judgment and Supporting Memorandum* (Doc. 36) at ¶ 5.

[35] *Defendant's Motion for Summary Judgment With Supporting Memorandum* (Doc. 29) at ¶ 6; *Plaintiff's Response to Defendant's Motion for Summary Judgment and Supporting Memorandum* (Doc. 36) at ¶ 6.

[36] *Defendant's Motion for Summary Judgment With Supporting Memorandum* (Doc. 29) at ¶ 7; *Plaintiff's Response to Defendant's Motion for Summary Judgment and Supporting Memorandum* (Doc. 36) at ¶ 7.

of process" – all activities which would no longer have been necessary once the Oakley Project was complete.

Additionally, while the employment contract between plaintiff and defendant is not itself a construction contract, it is incident to the Oakley Contract which was a construction contract. As the Kansas Court of Appeals observed in *Edward Kraemer & Sons, Inc. v. City of Overland Park*, while considering when a cause of action accrues for payment in construction contract cases, "[t]he rule that a contractor's claim for payment begins to run upon completion of the project, and the reasons given for that rule, are in accord with the rules applied in Kansas. . . . [G]enerally a cause of action accrues when the plaintiff could first have filed and prosecuted his action to a successful conclusion. In most contract cases, that means that the cause of action accrues when the contract is breached."[37]  It is equally clear here that, because of the relationship of plaintiff's duties under his employment contract to defendant's obligations under the Oakley Contract, plaintiff's cause of action would have accrued at least by the time the Oakley Contract was complete. The employment agreement required plaintiff's assistance in obtaining the job, and plaintiff was expected to assist with "setting up the finishing process" and assisting with owner/architect/general contractor relations "through the duration of the process."[38]   Given these

---

[37] 19 Kan. App. 2d 1087, 1091, 880 P.2d 789, 792-93 (1994) (internal quotations and citations omitted).

[38] *See Proposed Employment Agreement*, attached as Exhibit 1 to *Zahner Affidavit*, which is attached as Exhibit B to *Defendant's Motion for Summary Judgment With Supporting Memorandum* (Doc. 29).

requirements, plaintiff's duties would have been completed by the time defendant's obligations under the Oakley Contract, with which plaintiff's assistance was required, were fulfilled, if not sooner.

Because there appears to be no genuine dispute between the parties as to the fact that plaintiff's right to receive payment had arisen by the time of defendant's completion of the Oakley Contract, the court finds "there is no dispute as to the facts" in this case and, therefore, "the issue of what is reasonable becomes a question of law."[39]  The court concludes that the reasonable time, at which plaintiff's right to receive payment arose, was the time of defendant's completion of the Oakley Contract.  Based upon defendant's uncontroverted averment that it completed all services under the Oakley Contract no later than April 20, 1998,[40] the court finds that the effective date of the completion of the Oakley Contract by defendant was April 20, 1998.   As a result of this finding, the court concludes that plaintiff's cause of action for breach of contract accrued, and thus the five-year statute of limitations began to run, as of that date.  The five-year statute therefore expired on April 20, 2003, six weeks before plaintiff filed his petition commencing the instant action on June 4, 2003.  The court also notes that plaintiff does not offer evidence to directly controvert defendant's averment of fact that more than five years elapsed between the completion of the Oakley Contract and the date plaintiff filed his petition commencing this action.[41]

---

[39] *Arnold*, 249 Kan. at 751, 822 P.2d at 67-68.

[40] *Defendant's Motion for Summary Judgment With Supporting Memorandum* (Doc. 29) at ¶ 7.

[41] *Plaintiff's Response to Defendant's Motion for Summary Judgment and Supporting Memorandum* (Doc. 36) at ¶ 18.

**IV.      Conclusion**

Based upon the foregoing, the court concludes plaintiff's action is barred by virtue of being filed after the expiration of the applicable five-year statute of limitations. As a result, defendant's motion for summary judgment will be granted and plaintiff's claim will be dismissed as untimely filed.  Because of this decision, the court need not reach the final issue posed by defendant's motion regarding plaintiff's ability to support his claim of entitlement to between seven and ten percent of defendant's revenues from the Oakley Project, and it declines to do so.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. 29) is hereby granted.

**IT IS FURTHER ORDERED** that this case is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated this 31st day of March, 2005, at Topeka, Kansas.


s/K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge